[L. A. No. 25595. In Bank. Dec. 8, 1959.]

BETTY LOU JACOBS et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; VICTOR BERNARD JACOBS, Real Party in Interest.

Pacht, Ross, Warne & Bernhard, Isaac Pacht, Leo Altshuler and Harvey M. Grossman for Petitioners.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, and Edward A. Nugent, Deputy County Counsel for Respondents.

Gilbert, Thompson & Kelly, W. I. Gilbert, Jr., and Jean Wunderlich for Real Party in Interest.

GIBSON, C. J.—Betty and Gerald Jacobs, minors, and their maternal grandparents, Joe and Anna Wolf, seek a writ of prohibition to restrain Honorable Orlando H. Rhodes, Judge of the Superior Court of Los Angeles County, from trying any issue of law or fact presented in proceedings involving the custody and guardianship of the minors. They also seek a writ of mandamus to compel a transfer of the proceedings to another judge. The application is based upon the refusal of Judge Rhodes to grant a motion for his disqualification.

Betty and Gerald are the children of the real party in interest, Victor Jacobs, and his first wife, who died in 1947. Several months after the death of their mother, the children went to live with their maternal grandparents. Betty is now 17 years of age, and Gerald is approaching 15.

On January 20, 1956, the father petitioned for a writ of habeas corpus by which he sought custody of both children. The grandparents filed a return to the writ and a petition to be appointed guardians of the children. The proceedings were consolidated for trial and were heard by Judge Rhodes. On May 7, 1956, pursuant to stipulation, Judge Rhodes made an order under which the children were permitted to remain with the grandparents.

The father renewed his petition for habeas corpus on January 31, 1958, and the grandparents renewed their petition for guardianship. On November 25, 1958, after trial, Judge Rhodes rendered judgment in the habeas corpus proceeding awarding the father sole custody of Gerald but permitting him to allow Gerald to reside with his maternal uncle, Frank Wolf. The judgment awarded the father and grandparents joint custody of Betty and provided that at any time after April 1, 1959, the court might, upon application of the father, award him sole custody of Betty. Pursuant to stipulation, the father was ordered to make monthly payments to the grandparents for Betty's support and similar payments to the uncle while Gerald was in his custody. Judgment was also rendered denying the petition of the grandparents to be appointed guardians of the minors. On May 29, 1959, Judge Rhodes, pursuant to an ex parte application, awarded the father sole custody of Betty, directed the grandparents to deliver the children into the father's custody on June 19, and further directed that if the children refused to accompany the father to his residence the sheriff should take them into custody. A motion to vacate the order of May 29 was made by the grandparents on June 16 and denied by Judge Rhodes.

On June 17, 1959, the grandparents filed a motion to modify the custody provisions of the judgment of November 25, 1958, on the ground that there had been a change of circumstances. On June 22 they filed a "Supplemental Petition for Appointment of Guardians," and the next day they filed a motion under section 170.6 of the Code of Civil Procedure to disqualify Judge Rhodes from hearing their request for modification of the custody order and their petition for guardianship.* Judge Rhodes denied the motion and set the matters for hearing before himself.

Section 170.6 of the Code of Civil Procedure provides that no judge shall try any action or special proceeding when it is established by an affidavit that he is prejudiced against a party or attorney so that the party or attorney cannot, or believes he cannot, have a fair and impartial trial before such judge. Facts showing prejudice need not be alleged or proved, and, where a timely motion to disqualify is made, supported by an affidavit alleging prejudice, the case or matter, without any further act or proof, must be assigned to another judge for trial or hearing. It is provided that in no event shall a judge entertain a motion under this section if it is made after swearing in the first witness or the giving of any evidence or after the trial of the cause has otherwise commenced.

The question here is whether the motion was timely. Although the statute does not expressly so provide, it follows that, since the motion must be made before the trial has commenced, it cannot be entertained as to subsequent hearings which are a part or a continuation of the original proceedings.

In situations involving guardianship and custody orders subsequent proceedings to obtain changes in custody are continuations of the original proceeding to determine custody. For example, where a guardianship is established by one trial court, it retains jurisdiction over all matters relating to the proceeding, and another trial court does not have jurisdiction to interfere with the custody of the ward so long as the guardianship continues. (*Browne* v. *Superior Court*, 16 Cal.2d 593, 597-598 [107 P.2d 1, 131 A.L.R. 276].) Likewise, where a court in one county awards custody in a divorce action, it has continuing jurisdiction to modify its award, and other courts have no jurisdiction to appoint a guardian. (*Greene* v. *Superior Court*, 37 Cal.2d 307, 310 et seq. [231 P.2d 821].)

*Section 170.6 of the Code of Civil Procedure, as enacted in 1957, is set forth in full in the appendix to *Johnson* v. *Superior Court*, 50 Cal.2d 693, 701 [329 P.2d 5]. The section was amended in 1959 to apply to criminal as well as civil cases.

While, as pointed out in *Cooney* v. *Cooney,* 25 Cal.2d 202, 206 [153 P.2d 334], the modification of the custody provisions of a divorce decree is separate from and has no effect upon the portion of the decree dealing with divorce, the subsequent custody proceedings are nevertheless a continuation of the prior custody portion of the action.

 Except for the alleged change in circumstances, the issues presented by the motion to modify the judgment of November 25, 1958, and the supplemental petition for appointment of guardians are the same as those heard by Judge Rhodes in the prior proceedings. The parties are the same, and the paramount questions to be decided by the court, i.e., the competency of the father and the best interests of the children, are the same. In view of the nature of the orders, the motion to modify and the supplemental petition must be deemed to be continuations of the prior proceedings.

 If a disqualification were permitted under section 170.6 in matters which are continuations of a prior proceeding, it would mean that the judge who tried the case, and who is ordinarily in the best position to pass upon the questions involved, could by a mere general allegation of prejudice, and without any judicial determination of the facts, be disqualified from hearing such matters as motions for modification of a support order or an injunction, as well as motions for change of custody of children. Such procedure would make it possible for litigants to gamble on obtaining a favorable decision from one judge, and then, if confronted with an adverse judgment, allow them to disqualify him without presenting facts showing prejudice, in the hope of securing a different ruling from another judge in supplementary proceedings involving substantially the same issues.

The alternative writs are discharged, and the peremptory writs are denied.

Traynor, J., Spence, J., Peters, J., and Peek, J. pro tem.,* concurred.

McComb, J., dissented.

Petitioners' application for a rehearing was denied January 6, 1960. Peek, J. pro tem.,* participated therein in place of White, J., who deemed himself disqualified. McComb, J., was of the opinion that the application should be granted.

*Assigned by Chairman of Judicial Council.